James West
P.O.Box 15251
SF, CA 94115
westjcourt@gmail.com

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

James West, pro se

    Plaintiff(s),

 Vs.

PBC Management LLC aka

 Pacific Worksplaces

Keith Warner, Managing Partner

 Does 1-25   Defendants

         )
         )
         )
         )
         )
         )
         )
         )
         )
         )
         )
         )
         )

Case No.: **23-CV-03283**

## FIRST AMENDED
## COMPLAINT

**DEMAND FOR JURY TRIAL**

## JURISDICTION AND VENUE

1a)  this court has original jurisdiction in this action under 28 section

1331, 1343 and 1367.  This action is brought under the ADA Title III

and 42 USC sections 1981.  This court has supplemental jurisdiction

under section 1367(a) over related state law claims and violations to

include but not limited to Unruh, Disabled Person Act, breach of

contract, negligence, fraud and unfair business practices.

1b)  Venue is appropriate in this Court because a substantial part of the events I am suing about happened in this district.

1c)     Intradistrict Assignment is the San Jose division because this lawsuit arose in Santa Clara County; it should be assigned to the San Jose Division of this Court.

## STATEMENT OF FACTS

1)  Plaintiff is a black gender nonconforming male with a disabling anxiety disorder. Plaintiff entered into a contractual agreement with PBC Management LLC doing business in San Jose as Pacific Workplaces for an evening and weekends renewable 6 month co working service agreement that commenced on September 28, 2021.

2)  Pacific Workspaces is actually managed by PBC Management LLC and is the actual named defendant. PBC Management LLC is not mentioned any where in the Client Lease Agreement and Terms of Use and Pacific Workspaces is not registered with the California Secretary of State.

1st Amended Complaint West v PBC Mgmt LLC
23-cv-03283

**3)**   Plaintiff had contacted Pacific Workspace on or about September 24, 2021 by phone to verify price and availability. that the evenings and weekend co-working membership was available and that Plaintiff could start his membership on that day.

**4)**   But when Plaintiff arrived as a black gender non confirming male dressed in feminine attire was told to look elsewhere and was denied the opportunity to purchase workplace services.

**5)**   Plaintiff has also contacted Pacific Workplaces locations in San Francisco and San Mateo and was also denied an opportunity to contract for co working services prior to contacting the San Jose location.

**6)**   Plaintiff subsequently contact community manager Kathy Nguyen for the San Jose location who engaged Plaintiff by negotiating and entering into a co working agreement to include but not limited to copy, print, scan services, and continuous wifi and internet services, access to microwave, refrigerator,

mini-oven and "all you can drink" beverage service of coffee, tea etc.

7) Kathy Nguyen informed Plaintiff that the evening and weekend membership plan was "fairly new to (San Jose) location.

8) During the contracting stage for a workplace membership, between Plaintiff and Ms. Nguyen, Plaintiff was never subjected to any screening criteria or inquiry into Plaintiff's business to determine "fit(ness)."

9) Plaintiff's co-working agreement required a monthly fee which was due on the first of the each month with a grace period of 5 days.  Plaintiff made all monthly payments on time in according with the agreement.

10) Pacific Workspace agreement paragraph 2 entitled License states "This Agreement is the commercial equivalent of an agreement for accommodations in a hotel."

11) Also, Section 7 of the Workplace agreement requires Client and Operator agree to comply with all laws prohibiting discrimination based on person's sex, age, race, color, national

origin, disability and or religion and similar statutes.  The section also prohibited sexual harassment.

12) Also, Section 10 Miscellaneous Provisions expressly states under the section on applicable law:  The Agreement shall be governed and construed in accordance with the laws of the State of California.

13) A copy of the Client License Agreement and House Rules are attached to his complaint.

14) On or about September 30, 2021, Plaintiff made a request to have the office "music turned off" in the co-working area during evenings and weekend as the music was an annoyance and nuisance.  The co-working area contained overhead speaker located directly over the co working table which played the music loudly and on pre-recorded loop.  Plaintiff had to repeatedly make this request from Sept 2021 to about May 2022 as center staff repeatedly failed to honor their commitment to turn the music off after the shifts.

15) Private office, conference rooms and business lounge/community kitchen had no speakers. The over speakers played in the reception area and hallways thru out the Pacific Workspace site.

16) This arrange of having the music playing over head gave the impression that the co-working area had been previously used as a waiting area or open meeting area instead of a dedicated workspace.

17) The co working area had a sign posted for co-working members only but was bordered one side by private offices. The co working area was an open area with two tables and four chairs.

18) The work tables were arranged in a manner that did not allow for 6 feet of social distancing space and persons working at the table were seated in a manner that was face to face. The tables were not separated by any kind of plastic barriers. The lack of social distancing, or barriers increased the likelihood of COVID-19 transmission and other respiratory illnesses. Additionally, Pacific Workspaces member agreement did not

allow for the access doors to the co working area to be open and the air conditioning system was turned off after hours and on weekends. The lack of fresh circulating air on evening and weekends also increased the likelihood of COVID-19 and other upper respiratory illnesses.

19) Often Plaintiff was the only person working in the co working area on evenings and weekends.

20) Plaintiff access hours were defined as from 5:15p to 7am Monday thru to Thursday and Friday-Sunday till 7am (continuous access was permitted for the weekend).

21) During this access time period, staff had left for the work day and Plaintiff was often alone with the exception of other members who worked late on evenings or weekends. Plaintiff had no staff to get immediate assistance with on any matter as this was a design feature of Plaintiff's the evenings and weekend plan.

22) Plaintiff encountered a number of problems when Plaintiff arrived on evenings and weekends. Staff would not turn off the

overhead music as Plaintiff had requested and was informed staff would do so.  Often there was no coffee, coffee cups, teas bags, or other supplies that were promised as part of the Plaintiff prepared "beverage service".  Also, often there were not sufficient availability of other office supplies such as paper for the copier or the copier had error messages making the copier unavailable for use.  Plaintiff had to repeatedly request or remind staff to provide these supplies.

23)  Plaintiff often would encounter other members on evenings and weekends that would leave the door popped open and would entered the suite from the fire entrance setting off the building fire alarm.

24)  Plaintiff observe on numerous occasions members would leave glasses and dishes in the sink which was prohibited by house rules, and members would not monitor or escort their clients thru out the suite.  On one occasion, clients waiting in the reception area denied Plaintiff access to the men's room

because a woman client could not find the women's room and a woman was utilizing the men's room instead.

**25)** Plaintiff observe member attorneys re-arranging the furnish for the purposes of conducting depositions by blocking the hallways and entrance and exit doors.

**26)** Plaintiff also observed members carrying on loud conversations or playing loud music which all could be heard thru out the suite.

**27)** Plaintiff observed roaches and roach traps placed through out the community kitchen, reception area and men's restrooms.

**28)** Plaintiff was made aware that members were smoking in the suite because of the smell of tobacco and other substances like week smoke.

**29)** Plaintiff also observed that despite signs posted thru out the suite that doors are to remain closed, staff repeatedly left doors open thru out the suite including during the evening hours.

**30)** During the summer months of the 2022, Plaintiff requested additional air condition as the suite would become very hot but was told that after hours air conditioning services cost $100.

**31)** Posted on the doors and thru out the Pacific Workspaces suite were signs which stated "STOP PLEASE DO NOT ENTER THIS SPACE IF:  you have been in close contact with a person who is ill with the coronavirus, You have been in close contact with a person who has recently been exposed to the corona virus, You are currently experiencing a cough, shortness of breath, sore throat, headache, or stuffy nose.  ALL EMPLOYEES, MEMBERS, AND VISTIORS ARE REQUIRED TO WEAR A MASK AND PRACTICE 6 FEET OF SOCIAL DISTANCING AT ALL TIMES, AND ADHERE TO ANY OTHER GOVERNMENT MANDATED RESTRICTIONS CURRENTLY IN PLACE.

**32)** Another posted signed stating "TO ALL EMPLOYEES, MEMBERS AND VISITORS OF PACIFIC WORKPLACES COVID-19 PROTOCOLS: Due to the Covid 19 Pandemic,

1st Amended Complaint West v PBC Mgmt LLC
23-cv-03283

additional precautions are being taken for the Health and Safety of those that enter and use the space.

33) On August 19, 2022, due to the addition of two additional co-working clients who identified as Japanese. Plaintiff emailed Keith Warner and made a request for modification to the co-working space and additional services.  The email included a request to have the co-working tables separated by 6 feet to maintain appropriate social distance due to the addition of two additional members to the co-working area among other request.  Defendant Warner denied Plaintiff request to modify the co working area to maintain the table six feet a part. Defendant Warner stating that "our intention is the keep the tables configured the same … it's a shared space."

34) Despite this request also being made by the community manager MacFarlane, defendant Warner would not make any modification to the co working space to reduce the risk of expose to COVID-19 and other upper respiratory illness.

35) As the result, Plaintiff and two Japanese members voluntary worked out an arrangement to maintain social distancing.  The Japanese member eventually terminated their membership.

36) Plaintiff observed that signs in the workspace indicated that tables are to be used by one person per table.

37) On September 19, 2022, community manager Nguyen informed Pac members she was leaving the company and the new community manager would be Suman MacFarlane.

38) After Nguyen left, Plaintiff encountered additional problems at Pacific Workplaces such as being denied access to the utensils draw, the community kitchen being left in a mess with bbq sauce smeared all over the counter, BBQ ribs and other food left in the refrigerator to rot, leaving coke cans in the freezer to explode, and the community sink was left clogged and backed up with food waste.

39) Additionally, Plaintiff was denied access to the co working area on the weekend January 7, 2023 due to building maintence. Plaintiff only received the email on Jan 3, 2023.  Plaintiff had

1st Amended Complaint West v PBC Mgmt LLC
23-cv-03283

no time to make other arrangement and was not offered a

discount for the inconvenience.  Building management

informed Plaintiff that Pacific Workspace was given ample

advance warning.

40)   Then, in March 2023 to May 2023, Plaintiff was repeatedly

double charged the monthly co-working fee.  The explanation

Plaintiff received was that Plaintiff payment had not properly

been deposited into Pacific Workspaces account.  Plaintiff was

not given any advance warning that there were payment

problems rather multiple charges showed up on Plaintiff

banking account.  Because Plaintiff paid by check, Pacific

Workspace staff re-submitted the same check for the same

monthly bill to Plaintiff's bank for payment.  Plaintiff was

shocked and the bank charged the Plaintiff an overdraft fee.

41)   Plaintiff brought the matter to community manager MacFarlane

who assured Plaintiff that the overcharges would stop but the

overcharges continued.

1st Amended Complaint West v PBC Mgmt LLC
23-cv-03283

**42)**   42 USC SECTION 1981 RACE DISCRIMINATION

**43)**   42 USC of the US Code section: **All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by white citizens …**

**44)**   **The term "make and enforce contracts" includes the making, performance, modification and termination of contracts and the enjoyment of all benefits, privileges, terms, and conditions of the contractual agreement.**

**45)**   Plaintiff alleges that PBC Management managers, members and staff discriminated against Plaintiff based on Plaintiff's race.

**46)**   Plaintiff belongs to a protected class, Plaintiff attempted to contract for services and Plaintiff was denied the right to contract for services.  Further, after repeated denials of a workplace agreement, Plaintiff was offered a workplace agreement but Plaintiff did not enjoy the same benefits,

privileges, terms and conditions of the contractual agreement as white and Asian members.

**47)** On September 24, 2021, Plaintiff attempted to contract with PBC Management after being told by staff via phone that Plaintiff could start a contract that day.

**48)** However, when Plaintiff arrived to tour the facilities and start a membership Plaintiff was told to look elsewhere and was denied the opportunity to start a contract.

**49)** Plaintiff a member of a racial protected class, attempted to contract for services and was denied the right to contract for services with PBC Management doing business as Pacific Workspaces.

**50)** Plaintiff observed that white and Asian prospective client were repeatedly granted same day and short term membership.

**51)** Further Plaintiff continued to be treated less favorably than non black members and center staff.

**52)** Non black members violated the membership agreement by being loud, creating a nuisance (setting off the fire alarm;

- 15 -

leaving doors ajar; blocking hallways with chairs, smoking in the suite and violating house rules by leaving the dishes in the sink in express violation of house rules) but where never terminated for this conduct.

53) Plaintiff was subjected to harassment by non black members when they would take all the coffee cups, plastic plates and utensils so there was none for Plaintiff to use.

54) Plaintiff was repeatedly challenged when he arrived at the suite by white and Asian members asking "do you have a key or who are you here with?"

55) Plaintiff was subjected to ridicule for his work habits and complaints were made to staff about Plaintiff that were not accurate and Plaintiff was not promptly told about.

56) As a result, Plaintiff was viewed unfavorably by staff and management;

57) Plaintiffs' membership at Pacific Workspaces were terminated by the Defendant Warner alleging Plaintiff's "business was not a good fit"

1st Amended Complaint West v PBC Mgmt LLC
23-cv-03283

58) Plaintiff was informed that the only reason membership was terminated was for non payment of fees.  Plaintiff had paid all fees on time and in fact was repeatedly overcharge co working services during the period of March 2023 – June 2023.

59) As a further result, Plaintiff did not enjoy the benefits and services of his contracted agreement due to his race.

60) Title III ADA Failure to Accommodate (Reasonable Accommodation)

61) Title III prohibits private places of public accommodations from discriminating against individuals with disabilities.

62) 28 CFR 36.201(a) states:  No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any private entity who owns, leases, (or leases to) or operates a place of public accommodation.

63) 28 CFR 36.302(a) : a public accommodation shall make reasonable modifications in policies, practices, or procedures

1st Amended Complaint West v PBC Mgmt LLC
23-cv-03283

when the modifications are necessary to afford goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities.

**64)** Plaintiff alleges this claim against defendant PBC Management and Defendant Warner both his individual and official capacity as managing partner for PBC Management.

**65)** PBC Management LLC aka Pacific Workspaces is a business establishment renting out office, conference room and work places servicing Arizona, Nevada, and California.

**66)** As defined in the Client License Agreement and Terms of Use PBC Management aka Pacific Workspaces (Section 2 Licenses) is the commercial equivalent of an agreement for accommodation in a hotel.  As such PBC Management qualifies as a public accommodation under the ADA title 3.

**67)** Plaintiff requested on August 19, 2022 a modification to the co working area that included maintaining work tables at least 6 feet a part; providing more floor level chairs.  Defendant Warner did not provide the request accommodation but instead

offered to waive the 30 day notice so Plaintiff could go elsewhere.

68)   Plaintiff continued to be the only co working member in the co working area on evening and weekends.

69)   On May 3, 2023, Plaintiff received a termination notice from Defendant Warner.  Defendant Warner stated "I don't think your business and ours is good fit for each other.  It's time we parted ways."  On May 26, 2023, Plaintiff requested an extension to stay thru June 2023.  Defendant Warner granted the extension.

70)   After Plaintiff received the termination notice and an extension to stay, On May 30, 2023, Plaintiff received an email from Defendant Warner stating "this is unacceptable and Plaintiff must do better".  Plaintiff was sent a picture of documents spread out all over the co working tables.  This is the only complaint Plaintiff received from management or staff about his work habits.  The complaint was received after Defendant

Warner had decided to terminate Plaintiff's Workplace agreement.

71) Plaintiff suffers an anxiety episode on that day resulting in the messy table.  Plaintiff requested a reasonable accommodation on June 26 and again on June 28 for a modification to set aside the termination and allow Plaintiff a flexible work arrangement especially given his is the only co working member on evening and weekends.

72) Plaintiff had been using the co working area without instance since October 2021.

73) On June 30, 2023, Plaintiff send Defendant Warner an email requesting a reconsideration with medical verification from his primary care physician stating "Mr. West has been diagnosed with an Anxiety disorder which affects his ability to manage some projects resulting in episodes of disorganization.  I (Dr Higgins) request that you modify some policies, practices, or procedures that will allow Mr. West to continue to access the service at your company without interruption or termination."

**74)** Plaintiff did not receive a reply to his email with the medical verification.

**75)** Plaintiff qualifies as individual with a disability as defined by ADA; PBC Management aka Pacific Workspaces is a public accommodation subject to the ADA title 3

**76)** Defendants PBC Management and Warner knew of Plaintiff disability and consequential limitation and failed to grant Plaintiff reasonable accommodation and Defendants PBC Management subsequently terminated Plaintiffs co-working agreement.

**77)** California Civil Code Section 54 et al

**78)** Plaintiff incorporates paragraphs 1-77

**79)** California Civil Code section 54 makes a violation of ADA also the violation of this California law.

**80)** Plaintiff alleges that actions done by Defendants PBC Management and Defendant are also a violation of California Civil Code section 54.

**81)**   Unruh Civil Rights Claim

**82)**   Plaintiff incorporate paragraphs 1-80

**83)**   Civil Code section 52(a) provides that "[w]hoever denies, aids, or incites a denial or makes any discriminatory or distinction contrary to section 51, 51.5, 51.6 is liable for each and every offense for the actual damages and any amount that may be determine by a jury, or court sitting without a jury, up to a maximum of three times the amount of actual damages but in no case less than four thousand dollars ($4,000) and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in section 51, 51.5, or 51.6.

**84)**   Plaintiff alleges that PBC Management is a place of public accommodation and a business establishment providing workplaces open to the public.

**85)**   Plaintiff incorporates the allegations of the title III claim and section 1981 claim as the basis for the claims under the California Unruh Civil Rights.  By doing the things describe

thru out this complaint defendant PBC Management and Defendant Warner violated the Unruh Civil Rights Act.

86) Plaintiff contacted PBC Management aka Pacific Workspaces to contract for workplaces services

87) Defendant PBC Management is a business establishment doing business in California;

88) Plaintiff is a member of a protected class covered by the act: race, disability, and gender

89) Plaintiff was denied services and full and equal privileges offered by Pacific Workspaces;

90) Plaintiff  was subjected to harassment and discrimination because of Plaintiff's race, disability and gender and Plaintiff's contract was terminated due to Plaintiff protected status

91) Plaintiff suffered the lost of a work space resulting from the termination and suffered further damages.  Defendants PBC Management and Defendant Warner conduct to terminate Plaintiff's contract was a substantial factor in causing Plaintiff's harm and damages.

**92)**   Claim for Breach of Contract

**93)**   Plaintiff incorporates paragraphs 1-91

**94)**   Plaintiff and PBC Management representative Nguyen enter into a valid co working agreement that in exchange for co working space and services Plaintiff would pay a monthly fee.

**95)**   Plaintiff by paying his monthly fee on time each month since October 2021 performed his part of the contract and that all conditions required for defendants performance occurred.

**96)**   Defendants PBC Management and Defendant Warner breached the contract by failing:

**97)**    to provide beverage services on evening and weekends along with complimentary cups and other condiments;

**98)**    by allowing a nuisance to exist on the evening and weekend by allowing annoying over head music to be played; other members to have clients and guest wandering the suite unattended; leaving the doors ajar; setting off the fire alarm

**99)**   by failing to provide adequate notice of closure of the workplaces on January 7 and 8 and failing to provide Plaintiff with alternative work site or a discount;

**100)**  by allowing non black members to engage in nuisance conduct such as smoking, leaving dishes in the sink, leaving doors ajar, blocking hallways and racial motivated  harassing behavior

**101)**  by allowing race discrimination and harassment and failing to accommodate Plaintiff with a qualified disability as required in section of the 7 of the contract;

**102)**  by repeatedly overcharging Plaintiff for monthly charges from May 2023 to June 2023

**103)**  by wrongfully terminating the contract in violation of federal and California state law

**104)**  As a result Plaintiff incurred the following damages and expenses to include but limited to the following:

**105)**  Purchasing noise reducing devices

**106)**   Provide own supplies such as instant coffee, cups, and disposal plates,

107) despite defendant contracting for cleaning services often times Plaintiff had to clean the appliances in the community center before use such as the refrigerator, microwave, and mini-oven before use and wipe down counter tops and tables

108) incurred expenses to locate substitute and alternative work site during temporary closure

109) and other compensatory and nominal expenses

110) Negligence Claim

111) Plaintiff incorporate paragraphs 1-110 as set forth here in full

112) Plaintiff alleges that Defendants PBC Management and Warner owned Plaintiff a duty to act with reasonable and due care as to include but limited to the following:

113) To provide a the workplace environment that was COVID 19 complied with federal and state laws regarding the spread of COVID-19 and other respiratory communicable diseases

114) To provide a workplace that is of free excessive noises and nuisances (such as members triggering false fire alarms by entering the suite from emergency exit ways)

- 26 -

115) To provide a workplace that was secure and safe from intrusion by not allowing the doors to be left ajar, and not allowing members to allow their guest and clients to wander about the suite unescorted;

116) To provide with a Plaintiff was a reasonable accommodation upon request as mandate under federal and state law

117) To prevent harassment based on Plaintiff's race, sex, or disability

118) To properly process Plaintiff monthly workplace payments and not to overcharge Plaintiff

119) Defendants breach the duty negligently and recklessly

120) Defendants negligent and/or reckless conduct cause Plaintiff was a substantial cause of Plaintiff's harm and damages

121) Defendants conduct was a substantial factor in causing Plaintiff's harm and damages

122) As a result of Defendants' negligence, Plaintiff suffered special and general damages in the amounts to be determine at trial

1st Amended Complaint West v PBC Mgmt LLC
23-cv-03283

123) Plaintiff is informed and believes and alleges that in performing the acts alleged, Defendants acted with oppression, malice and conscious disregard of Plaintiff's rights, safety and well being;

124) Plaintiff is entitled to punitive damages to punish Defendants and to deter such conduct in the future in an amount to be determined at trial

125) Fraud Claim

126) Plaintiff incorporates paragraphs 1-124 as set forth here

127) Plaintiff alleges that Defendant Warner acting in both his individual and an official capacity as PBC Managing partner falsely represented to Plaintiff in an email on May 3, 2023 stating that: "we've tried our best to accommodate you along with the other members that also pay for our services but have come to the conclusion that your membership is having an adverse effect on our business.  As a mentioned to your about a year ago, I don't think your business and ours is a good fit for each other.  It's time we part ways."

1st Amended Complaint West v PBC Mgmt LLC
23-cv-03283

**128)** Defendant Warner statements falsely misrepresents Plaintiff conduct thru out his membership and Defendant Warner know that such a characterization of Plaintiff having an adverse effect on Pacific Workplaces was false and intended to fraudulently terminate Plaintiff's workplace agreement and was further intended to induce Plaintiff to rely on this false and misleading statements to terminate Plaintiff workplace agreement.

**129)** Defendant Warner further allegedly concealed from Plaintiff the existence of a grievance process that Plaintiff could have used to obtain review and a reversal of Defendants Warner's termination action and notice.

**130)** As a result of Defendant's Warner conduct both in his official and individual capacity, Plaintiff has been substantially harmed by Defendant Warner's false and misleading statements designed to terminate Plaintiff workplace agreement

**131)** Plaintiff prays for relief as set forth below.

**132)** ADA Retaliation Claim

133) Plaintiff alleges that Defendants PBC Management and Warner engage in prohibited ADA retaliation activity

134) Plaintiff is an individual with a disability as defined in the ADA

135) Defendant PBC Management is a business subject to the public accommodation requires as defined by section 2 entitled License which states: This Agreement is the commercial equivalent of an agreement for accommodation in a hotel.

136) Defendants' PBC Management and Warner had notice of the disability when Plaintiff engaged in protected activity to request a modification and a reasonable accommodation to continue Plaintiff workplace agreement.

137) Defendants PBC Management and Warner acting his capacity as Managing partner denied Plaintiff's request for an accommodation and subsequently terminated Plaintiff workplace agreement even when the accommodation request was accompanied by medical verification by Plaintiff's primary doctor

1st Amended Complaint West v PBC Mgmt LLC

23-cv-03283

138) Defendants PBC Management and Warner further interfered with Plaintiff in the exercise of his rights in his attempt to obtain by a temporary restraining order in the Northern California federal court even though PBC Management, and Warner had both active and construction notice of Plaintiff's application for a restraining to stay the termination but refused to identify their attorneys or request to the notices of the TRO.

139) Unfair Business Practice

140) Plaintiff incorporate paragraph 1-139 as set forth here

141) Plaintiff alleges that PBC Management, staff and Defendant Warner engage in unfair and deceptive acts or practices against Plaintiff; that Plaintiff suffered loss of money and the acts of PBC Management, staff and Warner were acts and deceptive practices which caused Plaintiff's loss moneys and termination of workplace agreement.

142) Plaintiff also alleges that all the allegations and claims contained in the preceding paragraphs constitute unfair business practices and support Plaintiff's unfair business practices claim.

1st Amended Complaint West v PBC Mgmt LLC

23-cv-03283

**143)** Damages

**144)** Plaintiff prays judgment against Defendants as follows:

**145)** Compensatory damages, in the amount to be determined and according to proof at trial

**146)** Declaratory judgment against defendant for their wrongful conduct

**147)** Punitive damages in an amount to be determined according to proof at trial

**148)** Reasonable attorney fees and for cost of suit in this action

**149)** For a Cease and Desist order

**150)** For an order to reinstate Plaintiff's workplace agreement and

**151)** For such other and further relief as the court deems proper.

**152)** Plaintiff demands jury trial on all issues


Date: November 21, 2022          Plaintiff /s/ James West

1st Amended Complaint West v PBC Mgmt LLC
23-cv-03283