UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES WEST,<br><br>   Plaintiff,<br><br> v.<br><br>PBC MANAGEMENT LLC, et al.,<br><br>   Defendants. | Case No. 23-cv-03283-PCP<br><br>**ORDER GRANTING MOTIONS TO DISMISS IN PART**<br><br>Re: Dkt. Nos. 30, 31 |

  Pro se plaintiff James West filed this lawsuit against defendants PBC Management LLC and Keith Warner (PBC's Managing Partner). Both PBC and Warner now move to dismiss the complaint. For the following reasons, the Court grants both motions in part.

## BACKGROUND

  PBC is a company that provides co-working spaces. West, a black gender non-conforming male with a disabling anxiety disorder, alleges that he was denied the opportunity to purchase a co-working membership at PBC's San Francisco and San Mateo locations in September 2021 because of his race and gender. West eventually entered into an evening and weekend co-working membership agreement at PBC's San José location later that month. *See* Dkt. No. 29-1. The co-working agreement requires a monthly fee which must be paid on the first day of each month.

  West alleges that he was differentially treated at the co-working space because of his race and gender. For example, he alleges that from September 2021 to May 2022, loud music played continually in his co-working area despite his repeated requests to have the music turned off. West further alleges that PBC turned off the air conditioning system in the evenings and over weekends, did not permit him to keep doors propped open, and failed to separate worktables by six feet to allow for social distancing, all increasing his likelihood of contracting COVID-19 and other

respiratory illnesses. According to West, other non-black members and staff were purportedly permitted to keep doors propped open in violation of PBC's house rules, and in August 2022, defendant Warner allegedly denied West's request to separate co-working tables by six feet.

West also alleges that there was often no coffee or tea in the evenings or during weekends notwithstanding a "beverage service" provision in his agreement. Additionally, he alleges that there were insufficient supplies including paper, a functional copier, and utensils, and that he repeatedly had to remind staff to provide him with these supplies. West also alleges that on many occasions, other members would leave their dirty glasses and dishes in the sink and keep the kitchen in a messy condition, in violation of PBC's house rules. West further alleges that he observed roaches throughout the kitchen and discovered that members were smoking in the space.

On January 7, 2023, West alleges that he was denied access to the co-working area due to building maintenance and had only received an email about this a few days beforehand on January 3, 2023. He alleges that he had no time to make other arrangements and was not offered a discount for the inconvenience, and that PBC had not given him ample advance warning. Finally, he alleges that from March to June 2023, he was double charged for the monthly co-working fee.

On May 3, 2023, West purportedly received a termination notice from Warner stating: "I don't think your business and ours is a good fit for each other. It's time we parted ways." Dkt. No. 29, at 19. On May 26, 2023, West requested an extension to stay through June 2023, which Warner allegedly granted. Nonetheless, on May 30, 2023, West received an email from Warner stating "this is unacceptable and [you] must do better" with an attached picture of West's many documents spread out across co-working tables. *Id.* West alleges that he had suffered an anxiety attack on the day his table was messy. West requested that Warner set aside his termination on June 26, 2023 and June 28, 2023 and that he be allowed a more flexible workplace arrangement given that he is usually the only member in the space on evenings and weekends.

On June 30, 2023, West purportedly sent Warner an email with a medical note from his primary care physician stating: "Mr. West has been diagnosed with an Anxiety disorder which affects his ability to manage some projects resulting in episodes of disorganization. I (Dr. Higgins) request that you modify some policies, practices, or procedures that will allow Mr. West to

continue to access the service at your company without interruption or termination." *Id.* at 20. West alleges that he never received a response to this email and that his membership was terminated.

West asserts the following causes of action against both defendants: (1) race discrimination under 42 U.S.C. § 1981; (2) failure to accommodate under Title III of the ADA; (3) violation of Cal. Civil Code § 54 premised on an ADA violation; (4) violation of Cal. Civil Code § 51 (Unruh Civil Rights Act) for race and disability discrimination; (5) breach of contract; (6) negligence; (7) fraud; (8) retaliation under the ADA; and (9) unfair business practices under the Unfair Competition Law. He requests compensatory and punitive damages, declaratory relief, attorneys' fees, a cease-and-desist order, and reinstatement of the co-working membership agreement.

PBC and Warner now move to dismiss the complaint under Rule 12(b)(6), arguing that West's limited factual allegations fail to sufficiently support his legal claims.

## LEGAL STANDARDS

The Federal Rules require a complaint to include only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In considering a Rule 12(b)(6) motion contending that a complaint fails to state a claim, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the non-moving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029 (9th Cir. 2009). Dismissal is required if the plaintiff fails to allege facts allowing the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). While legal conclusions "can provide the complaint's framework," the Court will not assume they are correct unless adequately "supported by factual allegations." *Id.* at 664.

## ANALYSIS

Because all claims are alleged against both PBC and Warner and both defendants raise largely the same arguments in their motions to dismiss, their motions will be considered together.

**I.    West Adequately Pleads a Race Discrimination Claim Under Section 1981.**

42 U.S.C. § 1981 prohibits racial discrimination in the making, performance, modification, and termination of contracts. To adequately plead a Section 1981 claim, a plaintiff must show that:

3

1  (1) he is a member of a racial minority; (2) the defendant had intent to discriminate on the basis of
2  race; and (3) the discrimination concerned one or more activities enumerated in the statute.
3  *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 589 U.S. 327 (2020). The
4  burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies
5  to Section 1981 claims. *Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989) (superseded
6  by statute on other grounds). Under the *McDonnell Douglas* framework, "once a plaintiff
7  establishes a prima facie case of race discrimination through indirect proof, the defendant bears
8  the burden of producing a race-neutral explanation for its action, after which the plaintiff may
9  challenge that explanation as pretextual." *Comcast Corp.*, 589 U.S. at 340. "The [initial] burden of
10 establishing a prima facie case of disparate treatment is not onerous. The plaintiff must prove by a
11 preponderance of the evidence that she applied for an available position for which she was
12 qualified, but was rejected under circumstances which give rise to an inference of unlawful
13 discrimination." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

14     West alleges that he was denied the opportunity to purchase a co-working membership on
15 several occasions in September 2021 on the basis of his race, observing that "white and Asian
16 prospective client[s] were repeatedly granted same day and short term membership[s]." Dkt. No.
17 29, at 15. He further alleges that he was not offered the same benefits as non-black members once
18 he joined PBC's San José location. For example, non-black members were purportedly allowed to
19 violate the membership agreement at his expense by being loud, leaving doors ajar, smoking on
20 the premises, and leaving dirty dishes in the kitchen sink.[1]

21     West adequately alleges that he is a member of a racial minority. He also sufficiently
22 pleads facts that give rise to an inference of unlawful discrimination under the first step of the
23 *McDonnell Douglas* framework. West purportedly observed that non-black individuals were
24 permitted to both purchase co-working memberships right away and repeatedly violate PBC's
25 house rules, whereas he could do neither. For example, he asserts that he "was told to look

---

[1] West separately alleges that non-black members subjected him to harassment when they used up all the cups, plates, and utensils in the kitchen and when they questioned his presence at the co-working space. But West does not sufficiently allege that this purportedly discriminatory conduct can be attributed to defendants PBC and Warner.

United States District Court
Northern District of California

1  elsewhere and was denied the opportunity to purchase workplace services" when he "arrived as a

2  black gender non conf[o]rming male dressed in feminine attire." Dkt. No. 29, at 3. Such evidence

3  of disparate treatment, even without allegations that defendants *intended* to discriminate against

4  West on the basis of race, establishes a prima facie case of race discrimination by a preponderance

5  of the evidence, and the burden of proof thus shifts to defendants. Defendants have not met their

6  burden of producing a race-neutral for their actions, namely, rejecting West's initial applications

7  for a co-working membership while granting such applications by white and Asian prospective

8  clients, and denying West the privileges afforded to non-black members in the co-working space.

9  The Court therefore denies PBC and Warner's motions to dismiss the Section 1981 claim.

**II.    West Fails To Adequately Plead a Title III Claim Under the ADA.**

Title III of the ADA prohibits discrimination on the basis of disability in places of public accommodation. *See* 42 U.S.C. § 12182(a). Public places are required to make reasonable modifications for individuals with disabilities to fully and equally enjoy the goods, services, facilities, privileges, advantages, and accommodations at such places. 28 C.F.R. § 36.302(a).

West argues that because PBC states that its co-working agreement "is the commercial equivalent of an agreement for accommodations in a hotel," PBC's co-working space is a place of public accommodation. Dkt. No. 29-1, at 2. Defendants counter that PBC does not fall under any of the statutorily enumerated categories to qualify as a place of public accommodation.[2] The Court need not resolve this question because West otherwise fails to adequately plead a Title III claim.

West first alleges that his request to move worktables at least six feet apart in August 2022 was denied, thereby demonstrating PBC and Warner's failure to make reasonable accommodations to prevent the spread of COVID-19 and other respiratory illnesses. But West's purported disability is an anxiety disorder, not being immunocompromised. While defendants may have failed to

---

[2] A private entity is considered a public accommodation if (1) its operations affect commerce; and (2) it falls within at least one of the following categories: (a) places of lodging; (b) establishments serving food or drink; (c) places of exhibition or entertainment; (d) places of public gathering; (e) sales or rental establishments; (f) service establishments; (g) public transportation terminals, depots, or stations; (h) places of public display or collection; (i) places of recreation; (j) places of education; (k) social service center establishments; or (l) places of exercise or recreation. 42 U.S.C. § 12181(7).

5

accommodate West in the literal sense by allegedly denying his request to separate tables to satisfy social distancing requirements, West's complaint does not include allegations showing how this decision was related to West's claimed disability of anxiety, and thus does not state a valid Title III claim premised on this decision.

West separately alleges that defendants discriminatorily terminated his co-working membership notwithstanding his June 30, 2023 email identifying his anxiety disorder. But West's disability discrimination allegation suffers from two flaws. First, the defendants communicated their plan to terminate West's membership more than a month before West emailed them about his anxiety disorder. As a result, West does not allege sufficient facts to show that defendants terminated his membership on the basis of his disability. Second, it is not even clear from the complaint that defendants were aware of West's disability when his membership was officially terminated following the one-month extension defendants granted to West. If it were true that defendants were not aware of his disability at that time, they had no obligation to respond to West's June 30 email or potentially accommodate his anxiety disorder.

Finally, West alleges that defendants' failure to allow him a flexible workplace agreement (presumably, to permit him to be disorganized in the co-working space during evenings and weekends) qualifies as a failure to make reasonable accommodations under the ADA. Again, however, it is not apparent from the complaint that defendants were even aware of West's anxiety disorder when he made this request on June 26 and again on June 28, since he only sent an email to Warner concerning his disability on June 30.

In short, West fails to adequately plead either disability discrimination or a failure to accommodate under Title III of the ADA. The Court thus grants with leave to amend defendants' motion to dismiss West's Title III claim.

**III.     West Fails To Adequately Plead a Violation of Cal. Civ. Code § 54.**

Cal. Civil Code § 54(c) makes a violation of the ADA a violation of California law. West premises his Section 54 claim on the same allegations underlying his Title III claim. Dkt. No. 29, at 21. Because the Court grants defendants' motion to dismiss the Title III claim, for the same reasons the Court grants with leave to amend defendants' motion to dismiss the Section 54 claim.

### IV. West Adequately Pleads A Violation of Cal. Civ. Code § 51 For Race Discrimination.

Cal. Civil Code § 51 (Unruh Civil Rights Act) requires business establishments to provide equal accommodations to all customers notwithstanding race, gender, disability, and other protected classes.[3] West premises his Section 51 claim on the same allegations underlying his Section 1981 and Title III claims. Dkt. No. 29, at 22. Because the Court finds West's race discrimination claim under Section 1981 to be sufficiently pleaded but finds his disability discrimination claim under Title III to be insufficiently pleaded, the Court denies defendants' motion to dismiss the Section 51 claim as to West's race discrimination theory but grants with leave to amend defendants' motion to dismiss the Section 51 claim as to West's disability discrimination theory.

### V. West Adequately Pleads a Breach of the Co-Working Agreement.

To prevail on a cause of action for breach of contract under California law, a plaintiff must prove: (1) the existence of the contract; (2) the plaintiff's performance of the contract or excuse for nonperformance; (3) the defendant's breach; and (4) the resulting damage to the plaintiff. *Richman v. Hartley*, 224 Cal.App.4th 1182, 1186 (2014).

Here, West attaches the co-working agreement to his complaint, proving the existence of a contract, and adequately pleads that he paid the monthly fee for his co-working membership starting in October 2021. *See* Dkt. No. 29-1. But he alleges that PBC and Warner breached the contract by: (1) failing to provide beverage services on weekends and evenings; (2) permitting a nuisance to exist by allowing other members to play loud music, leave doors ajar, smoke on the premises, and leave dirty dishes in the sink; (3) failing to provide adequate notice of closure during maintenance and an alternative working space or discount in January 2023; (4) wrongfully terminating the contract; and (5) overcharging West from March through June 2023.

---

[3] The Unruh Civil Rights Act states: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). Because the Act applies to "all business establishments" rather than only places of public accommodation, PBC falls within the scope of the state statute.

7

1   Several of West's claims fail because he does not plead that defendants breached any
2   provision of the co-working agreement. First, the agreement notes that "Beverage Services" is an
3   optional service "available for purchase on a per user basis." Dkt. No. 29-1, at 1. West does not
4   allege that he purchased this optional add-on service, and defendants thus cannot be liable for
5   failing to provide beverages on weekends and evenings. Second, while West alleges that
6   defendants breached the contract by permitting other members to violate PBC's house rules, the
7   agreement explicitly states: "Operator shall have no responsibility to Client for any violation or
8   non-performance of these House Rules by any of Operator's other Clients." *Id.* at 12. Third, West
9   fails to identify which provision of the contract defendants breached by not providing him an
10  alternative workspace or discount during building maintenance. After all, by West's own
11  allegations, he did receive at least a four-day notice about the closure. Fourth, and finally, West's
12  termination at will was not a breach of the contract because Warner provided West with notice of
13  termination in early May 2023 via email, noting that PBC's and West's businesses were not a
14  good fit, and even granted an extension of his membership in June 2023. As required by the
15  agreement, the notice was in writing and was effective only after the last calendar day in May.[4]

16  West adequately pleads, however, that defendants overcharged him for monthly payments
17  from March to June 2023. He alleges that he was "repeatedly double charged the monthly co-
18  working fee" from March to June 2023 and that "multiple charges showed up on [his] banking
19  account." *Id.* at 13. Because the co-working agreement envisions a monthly fee to be paid by
20  clients only once on the first of every month, West's allegations that he was double charged in
21  March, April, May, and June 2023 sufficiently allege that defendants breached the contract. His
22  allegations are not conclusory because he pleads them with adequate factual detail, pleading, for
23  example, that PBC's community manager "assured [West] that the overcharges would stop" but
24  the overcharges nonetheless continued. *Id.* Accordingly, West adequately pleads a breach of
25  contract by defendants on the theory that he was double charged from March through June 2023.

---

[4] The co-working agreement states: "In any event, the termination of this Agreement shall be effective on the last calendar day of the month in which the last of required period falls." *Id.* at 6.

**VI.     West Fails To Adequately Plead Negligence.**

To prevail on a cause of action for negligence under California law, a plaintiff must establish: (a) defendant's legal duty to use due and reasonable care; (b) breach of such legal duty; and (c) the breach as the proximate or legal cause of the resulting injury. *Ladd v. County of San Mateo*, 12 Cal.4th 913, 917 (1996). West alleges that defendants breached their legal duty to provide a workplace: (1) compliant with COVID-19 protocols; (2) free of excessive nuisances such as loud music; (3) secure from intrusion caused by doors left ajar; (4) with reasonable accommodations for disability; and (5) free of harassment based on race, gender, and disability.

While West adequately pleads that PBC and Warner had a legal duty to act with due care towards him, he fails to allege facts establishing that defendants breached such a duty. Defendants argue that the failure to address West's "highly personalized and individualized requests in a shared co-working space does not constitute a breach of the duty of care." Dkt. No. 30, at 12; Dkt. No. 31, at 13. But "whether the duty of ordinary care has been breached depends on the particular circumstances." *Hacala v. Bird Rides, Inc.*, 90 Cal.App.5th 292, 323 (2023). Here, defendants may have breached their duty of reasonable care towards West notwithstanding his highly personalized requests had they known of his unique circumstances—i.e., that West had an anxiety disorder that could have contributed to his disorganization and need for special accommodations in the co-working space. But because defendants were not aware of West's anxiety at the time of his individualized requests (West only alleges that he informed defendants of his diagnosis on June 30, 2023, postdating his requests), West does not adequately allege that the defendants' failure to grant his first three specific requests constituted a breach of any duty of care owed to him.

Even if defendants were somehow aware of his anxiety diagnosis, West fails to allege how the three requests to comply with COVID-19 protocols, abate loud music, and prevent doors from remaining ajar are within the scope of defendants' duty to provide reasonable care to him as an individual with anxiety disorder. And West's negligence claims rooted in disability discrimination and failure to accommodate fail for the same reasons as discussed above. Most importantly, West fails to show that he was injured by the aforementioned conduct, as is required to adequately plead

1  the element of damages in a negligence claim.[5] The Court thus grants with leave to amend

2  defendants' motions to dismiss West's negligence claim.

3  **VII.    West Fails To Adequately Plead Fraud.**

4        A complaint for fraud must allege the following elements: (1) a knowingly false

5  representation by the defendant; (2) an intent to deceive or induce reliance; (3) justifiable reliance

6  by the plaintiff; and (4) resulting damages. *Service by Medallion, Inc. v. Clorox Co.*, 44

7  Cal.App.4th 1807, 1816 (1996). "In alleging fraud or mistake, a party must state with particularity

8  the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

9        Here, West alleges that defendants misrepresented to him the reason for their termination

10 of his co-working agreement. Specifically, Warner told West that PBC "tried our best to

11 accommodate you along with the other members that also pay for our services but [has] come to

12 the conclusion that your membership is having an adverse effect on our business." Dkt. No. 29, at

13 28. West fails to adequately plead that this representation was false under the heightened

14 particularity requirements of Rule 9(b). Beyond stating in a conclusory fashion that defendants

15 falsely misrepresented the reason for terminating his co-working agreement, West does not

16 sufficiently allege underlying facts to support this legal conclusion. To the contrary, Warner

17 purportedly attached to the termination email an image of West's documents scattered across

18 worktables, undermining the plausibility of West's allegation of falsity by suggesting that his

19 disorganization was adversely affecting other members in the co-working space. Accordingly, the

20 Court grants with leave to amend defendants' motion to dismiss the fraud claim.

21 **VIII.   West Fails To Adequately Plead a Retaliation Claim Under the ADA.**

22       Under the ADA, "[n]o person shall discriminate against any individual because such

23 individual has opposed any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a).

24 To establish a prima facie case of retaliation under the ADA, a plaintiff must show that: (1) he

---

[5] West also alleges that defendants were negligent for failing to properly process his monthly payments and for overcharging him. Dkt. No. 29, at 27. But the economic loss rule "bars a tort action in the absence of personal injury or physical damage to property." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal.4th 979, 984 (2004). Because West adequately pleads monetary damages resulting from overpayment, the Court allows the breach of contract claim on this basis to move forward but the negligence claim must be dismissed based on the economic loss rule.

1  engaged in protected activity; (2) suffered an adverse … action; and (3) there was a causal link
2  between the two. *Pardi v. Kaiser Foundation Hospitals*, 389 F.3d 840, 849 (9th Cir. 2004) (citing
3  *Brown v. City of Tuscon*, 336 F.3d 1181, 1186–87 (9th Cir. 2003)). Once the plaintiff establishes a
4  prima facie case, the defendant has the burden to present legitimate reasons for the adverse action,
5  after which (if the burden is met) the plaintiff must show that the reasons are pretextual. *Coons v.*
6  *Secretary of U.S. Dept. of Treasury*, 383 F.3d 879, 887 (9th Cir. 2004) (citing *Brooks v. City of*
7  *San* Mateo, 229 F.3d 917, 928 (9th Cir. 2000)). In short, the *McDonnell Douglas* burden-shifting
8  framework applies to ADA retaliation claims.

9  West alleges that defendants retaliated against him by terminating his membership after he
10 requested accommodations in August 2022 (seeking compliance with COVID-19 requirements)
11 and later in June 2023 (when he requested a flexible workplace arrangement and informed them of
12 his anxiety). Defendants respond that they cannot be sued for ADA retaliation because, in their
13 view, this claim can only be asserted against employers and they do not have an employment
14 relationship with West. In support of this position, defendants cite the ADA's general employment
15 discrimination provision, which states: "No covered entity shall discriminate against a qualified
16 individual on the basis of disability in regard to job application procedures, the hiring,
17 advancement, or discharge of employees, employee compensation, job training, and other terms,
18 conditions, and privileges of employment." 42 U.S.C. § 12112(a). "Covered entity" in this
19 provision means an employer, employment agency, labor organization, or joint labor-management
20 committee. 42 U.S.C. § 12111(2). While PBC likely does not qualify as a covered entity as a co-
21 working space that does not employ its members, defendants do not explain why the ADA's
22 retaliation provision, which applies to any "person," would not apply to them. 42 U.S.C. §
23 12203(a).

24 The Court need not address this statutory question at this juncture because West fails to
25 demonstrate a prima facie case of ADA retaliation. Namely, he fails to plead causation between
26 his purported protected activity (making requests for accommodation due to his disability) and the
27 adverse action (his eventual termination). Moreover, his requests to enforce social distancing were
28 made in August 2022, nearly one year before his termination in June 2023, undermining any

1  showing of causation. And his requests for a flexible workplace given his anxiety disorder
2  diagnosis were made in June 2023, *after* Warner had already sent him an email stating that PBC
3  was terminating his membership for his disorganized behavior in May 2023. Taken together,
4  West's factual allegations fail to demonstrate that PBC terminated his membership because of his
5  requests for accommodation. The Court therefore grants with leave to amend defendants' motion
6  to dismiss the ADA retaliation claim.

**IX.     West Fails To Adequately Plead an Unfair Business Practices Claim.**

California's Unfair Competition Law (UCL) prohibits unfair competition, which means "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. Code § 17200. When assessing a UCL claim, courts consider each of three prongs—unlawful, fraudulent, and unfair—to determine whether a practice constitutes unfair competition, and "a claim that sufficiently pleads any of these prongs survives a motion to dismiss." *MacDonald v. Ford Motor Co.*, 37 F.Supp.3d 1087, 1097 (N.D. Cal. 2014). Under the UCL, "prevailing plaintiffs are generally limited to injunctive relief and restitution." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003).

Because the Court finds that West adequately pleads claims for breach of contract and race discrimination, West sufficiently alleges a UCL violation under the unlawful prong. But in the Ninth Circuit, a plaintiff must also establish that he lacks "an adequate remedy at law before securing equitable restitution for past harm under the UCL." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844–45 (9th Cir. 2020). Since West fails to allege that his legal remedies are inadequate and instead presumably requests monetary damages for his breach of contract and race discrimination claims, he cannot obtain relief for past harm under the UCL as his complaint currently stands.

Nonetheless, West could still seek forward-looking injunctive relief under the UCL. *See Brooks v. Thompson Reuters Corp.*, 2021 WL 3621837, at *10 (N.D. Cal. Aug. 16, 2021) ("The holding in *Sonner* applies only to equitable restitution for past harm under the UCL, not to an injunction for future harm."). To seek injunctive relief, however, a plaintiff must show that he faces "real or immediate threat that [he] will again be wronged in a similar way." *Mayfield v.*

12

*United States*, 599 F.3d 964, 970 (9th Cir. 2010). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief … if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). Because West fails to sufficiently allege that he is facing ongoing harm or that he will face a contract breach or race discrimination again if he signs up for another co-working membership at PBC, West lacks standing to bring a claim for injunctive relief under the unlawful prong of the UCL.

As to the unfair and fraudulent prongs, West alleges here that defendants "engage[d] in unfair and deceptive acts or practices against [him]" and that "the acts of PBC Management, staff and Warner were acts and deceptive practices" that caused West to lose money. Dkt. No. 29, at 31. Beyond this bare assertion, West does not plead any facts to sufficiently allege a UCL claim under these prongs. Because West's allegations of unfair and fraudulent business practices are entirely conclusory, the Court also grants with leave to amend defendants' motion to dismiss this claim.

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motions to dismiss West's claims with leave to amend, with the exception of his breach of contract claim premised on the theory that he was overcharged from March through June 2023 and his race discrimination claims under 42 U.S.C. § 1981 and Cal. Civil Code § 51. If West so chooses, he must submit an amended complaint addressing the deficiencies as to the remaining claims within 21 days of this Order.

**IT IS SO ORDERED.**

Dated: May 7, 2024

P. Casey Pitts
United States District Judge