James West
P.O.Box 15251
SF, CA 94115
westjcourt@gmail.com

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

James West, pro se

        Plaintiff(s),

Vs.

PBC Management LLC aka

  Pacific Workplaces

Keith Warner, Managing Partner

 Does 1-25   Defendants

_____
_____

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: **23-CV-03283**

**[PROPOSED]**

**THIRD AMENDED**

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

**Date:  July 12, 2024**

**Complaint filed June 30, 2023**

Judge P Casey Pitts

## JURISDICTION AND VENUE

1a)   this court has original jurisdiction in this action under 28 section

1331, 1343 and 1367.  This action is brought under the ADA Title III

and 42 USC sections 1981.  This court has supplemental jurisdiction

under section 1367(a) over related state law claims and violations to

include but not limited to Unruh, breach of contract, negligence, fraud

and unfair business practices.

1b)  Venue is appropriate in this Court because a substantial part of the events I am suing about happened in this district.

1c)  Intradistrict Assignment is the San Jose division because this lawsuit arose in Santa Clara County; it should be assigned to the San Jose Division of this Court.

## STATEMENT OF FACTS

1)  Plaintiff is a black gender nonconforming male with a disabling anxiety disorder and a physical disability (acute lower back pain). Plaintiff entered into a contractual agreement with PBC Management LLC doing business in San Jose as Pacific Workplaces for an evening and weekends renewable month to month co working service agreement that commenced on September 28, 2021.

2)  Defendant Pacific Workplaces is actually managed by PBC Management LLC and is the actual named defendant. PBC Management LLC is not mentioned any where in the Client Lease Agreement and Terms of Use and Pacific Workplaces is not registered with the California Secretary of State.

3)     Defendant Pacific Workplaces is a business establishment in California subject to the authority of the Unruh Civil Rights Act.

4)     Defendant Pacific Workplaces is a place of public accommodation as defined by the Title III of the ADA Public Accommodation because PBC Management aka Pacific Workplaces is a facility operated by a private entity whose operations affect commerce and falls within at least one of the following categories as defined by 28 CFR 36.104: (5) other sales or rental establishment and (6) other service establishment.

5)     Plaintiff does not know the true and names or capacities of the persons or entities sued herein as DOES 1-25, inclusive, and therefore sues such Defendants by such fictitious names. Plaintiff is informed and believes, and upon such information and belief alleges, that each of the DOE Defendants is in some manner legally responsible for the damages suffered by Plaintiff as alleged herein. Plaintiff will amend this Complaint

to set forth the true names and capacities of these Defendants when they have been ascertained, along with appropriate charging allegations, as may be necessary.

**6)** Plaintiff had contacted Pacific Workplaces on or about September 24, 2021 by phone to verify price and availability that the evenings and weekend co-working membership was available and that Plaintiff could start his membership on that day.  Plaintiff was informed by the Pacific Workplaces staff over the phone that Plaintiff could visit the office and sign up the same day.

**7)** But when Plaintiff arrived as a black gender non confirming male dressed in feminine attire was told to look elsewhere and was denied the opportunity to purchase workplace membership or services.

**8)** Plaintiff has also contacted Pacific Workplaces locations in San Francisco and San Mateo and was also denied an opportunity to contract for co working services prior to contacting the San Jose location.

**9)** Plaintiff subsequently contacted community manager Kathy Nguyen of the San Jose location who engaged Plaintiff by negotiating and entering into a co working agreement to include but not limited to copy, print, scan services, and continuous wifi and internet services, access to microwave, refrigerator, mini-oven and "all you can drink" beverage service of coffee, tea etc. Plaintiff's purchase of an evening and weekend plan included the purchase of the beverage service and the beverage service fee was included in the total purchase price of the weekend and evenings membership.

**10)** Kathy Nguyen informed Plaintiff that the evening and weekend membership plan was "fairly new to (San Jose) location.

**11)** During the contracting stage for a workplace membership, between Plaintiff and Ms. Nguyen, Plaintiff was never subjected to any screening criteria or inquiry into Plaintiff's business to determine "fit(ness)." The entire contract occurred via phone and the internet. Plaintiff's co-working agreement required a monthly fee which was due on the first of the each

month with a grace period of 5 days.  Plaintiff made all monthly payments on time in according with the agreement.

12) Pacific Workplaces web site offers the option to purchase a variety of office, co-working space, and conference room rental plans with office services such as beverage service, mail box, answering service, and copy, print and scan services.

13) Pacific Workplaces web site states: we provide private offices, virtual offices, all access passes and meeting rooms through Northern California but also in Reno, Las Vegas, and Phoenix…this flexibility allows legal professionals to work from different locations without being tied down to a long term lease.

14) The availability of professional support services at Pacific Workplaces can help attorneys focus on their core activities…we offer receptionist services, mail and package handling and call services.

15) Pacific Workplaces agreement paragraph 2 entitled License states "This Agreement is the commercial equivalent of an agreement for accommodations in a hotel."

16) Also, Section 7 of the Workplace agreement requires Client and Operator agree to comply with all laws prohibiting discrimination based on person's sex, age, race, color, national origin, disability and or religion and similar statutes. The section also prohibited sexual harassment.

17) Also, Section 10 Miscellaneous Provisions expressly states under the section on applicable law: The Agreement shall be governed and construed in accordance with the laws of the State of California.

18) A copy of the Client License Agreement and House Rules are attached to his complaint.

19) On or about September 30, 2021, Plaintiff made a request to have the office "music turned off" in the co-working area during evenings and weekend as the music was an annoyance and nuisance. The co-working area contained an overhead

3rd Amended Complaint West v PBC Mgmt LLC
23-cv-03283

speaker located directly over the co working table which played the music loudly and on pre-recorded loop.  Plaintiff had to repeatedly make this request from Sept 2021 to about May 2022 as center staff repeatedly failed to honor their commitment to turn the music off after the shifts.

20) Private office, conference rooms and business lounge/community kitchen had no speakers.  The overhead speakers played in the reception area and hallways thru out the Pacific Workplaces site.

21) This arrange of having the music playing over head gave the impression that the co-working area had been previously used as a waiting area or open meeting area instead of a dedicated workspace.

22) The co working area had a sign posted for co-working members only but was bordered one side by private offices.  The co working area was an open area with two tables and four chairs.

23) The work tables were arranged in a manner that did not allow for 6 feet of social distancing space and persons working at the

table were seated in a manner that was face to face.  The tables were not separated by any kind of plastic barriers.  The lack of social distancing, or barriers increased the likelihood of COVID-19 transmission and other respiratory illnesses. Additionally, Pacific Workplaces member agreement did not allow for the access doors to the co working area to be open and the air conditioning system was turned off after hours and on weekends. The lack of fresh circulating air on evening and weekends also increased the likelihood of COVID-19 and other upper respiratory illnesses.

**24)** Often Plaintiff was the only person working in the co working area on evenings and weekends.

**25)** Plaintiff access hours were defined as from 5:15p to 7am Monday thru Thursday and Friday-Sunday till 7am (continuous access was permitted for the weekend).

**26)** During this access time period, staff had left for the work day and Plaintiff was often alone with the exception of other members who worked late on evenings or weekends.  Plaintiff

had no staff to get immediate assistance with on any matter as this was a design feature of Plaintiff's evenings and weekend plan.

27) On November 18, 2021, Plaintiff received an email from the Pacific Workplaces staff with instructions on how to make coffee on evenings and weekends when staff were not present. The email contained detailed instructions with jpg images. These instructions are only provided to members with a membership that included the "all you can drink beverage service" after hours.

28) Plaintiffs' evening and weekend membership plan included the beverage service fee as part of the total membership fee paid each month.

29) On August 20, 2022, following a complaint by Plaintiff to Defendant Warner about the lack of beverage service supplies, Defendant Warner writes: There are certainly some improvements we can make to make your after hours use of the space better. Kathy (community manager) and her staff will be

sure to leave more coffee supplies and cups when they close at 5pm.

30) Pacific Workplaces had video security and surveillance cameras located thru out the suite including cameras posted in the co-working area, community room, kitchen, and reception areas. These cameras were operated and monitored by PBC Management and staff.

31) Plaintiff continue to encounter problems with lack of beverage supplies and started bring his own supplies.

32) Plaintiff encountered a number of problems when Plaintiff arrived on evenings and weekends. Staff would not turn off the overhead music as Plaintiff had requested and was informed staff would do so. Often there was no coffee, coffee cups, teas bags, or other supplies that were promised as part of the Plaintiff prepaid "beverage service". Also, often there were not sufficient availability of other office supplies such as paper for the copier or the copier had error messages making the copier

unavailable for use. Plaintiff had to repeatedly request or remind staff to provide these supplies.

33) Plaintiff often would encounter other members on evenings and weekends that would leave the door popped open and would entered the suite from the fire entrance setting off the building fire alarm.

34) Plaintiff observed on numerous occasions members would leave glasses and dishes in the sink which was prohibited by house rules, and members would not monitor or escort their clients thru out the suite. On one occasion, clients waiting in the reception area denied Plaintiff access to the men's room because a woman client could not find the women's room and a woman was utilizing the men's room instead.

35) Plaintiff observed member attorneys re-arranging the furnish for the purposes of conducting depositions by blocking the hallways and entrance and exit doors.

**36)** Plaintiff also observed members carrying on loud conversations or playing loud music which all could be heard thru out the suite.

**37)** Plaintiff observed roaches and roach traps placed through out the community kitchen, reception area and men's restrooms.

**38)** Plaintiff was made aware that members were smoking in the suite because of the smell of tobacco and other substances like weed smoke.

**39)** Plaintiff also observed that despite signs posted thru out the suite that doors are to remain closed, staff repeatedly left doors open thru out the suite including during the evening hours.

**40)** Additionally, on holidays staff would forget to set the suite door to lock leaving the entire suite accessible to anyone who gained access to the floor.

**41)** During the summer months of the 2022, Plaintiff requested additional air condition as the suite would become very hot but was told that after hours air conditioning services cost $100.

**42)** Posted on the doors and thru out the Pacific Workplaces suite were signs which stated "STOP PLEASE DO NOT ENTER THIS SPACE IF: you have been in close contact with a person who is ill with the coronavirus, You have been in close contact with a person who has recently been exposed to the corona virus, You are currently experiencing a cough, shortness of breath, sore throat, headache, or stuffy nose. ALL EMPLOYEES, MEMBERS, AND VISTIORS ARE REQUIRED TO WEAR A MASK AND PRACTICE 6 FEET OF SOCIAL DISTANCING AT ALL TIMES, AND ADHERE TO ANY OTHER GOVERNMENT MANDATED RESTRICTIONS CURRENTLY IN PLACE.

**43)** Another posted signed stating "TO ALL EMPLOYEES, MEMBERS AND VISITORS OF PACIFIC WORKPLACES COVID-19 PROTOCOLS: Due to the Covid 19 Pandemic, additional precautions are being taken for the Health and Safety of those that enter and use the space.

**44)** On August 19, 2022, due to the addition of two additional co-working clients who identified as Japanese. Plaintiff emailed Keith Warner and made a request for modification to the co-working space and additional services. The email included a request to have the co-working tables separated by 6 feet to maintain appropriate social distance due to the addition of two additional members to the co-working area among other request. Defendant Warner denied Plaintiff request to modify the co working area to maintain the table six feet a part. Defendant Warner stating that "our intention is the keep the tables configured the same … it's a shared space."

**45)** Despite this request also being made by the community manager MacFarlane, defendant Warner would not make any modification to the co working space to reduce the risk of expose to COVID-19 and other upper respiratory illness.

**46)** As a result, Plaintiff and two Japanese members voluntary worked out an arrangement to maintain social distancing. The Japanese member eventually terminated their membership.

**47)** Plaintiff observed that signs in the workspace indicated that tables are to be used by one person per table.

**48)** On September 19, 2022, community manager Nguyen informed Pac members she was leaving the company and the new community manager would be Suman MacFarlane.

**49)** After Nguyen left, Plaintiff encountered additional problems at Pacific Workplaces such as being denied access to the utensils draw, the community kitchen being left in a mess with bbq sauce smeared all over the counter, BBQ ribs and other food left in the refrigerator to rot, leaving coke cans in the freezer to explode, and the community sink was left clogged and backed up with food waste.

**50)** Additionally, Plaintiff was denied access to the co working area on the weekend January 7, 2023 due to building maintence. Plaintiff only received the email on Jan 3, 2023. Plaintiff had no time to make other arrangement and was not offered a discount for the inconvenience. Building management

informed Plaintiff that Pacific Workplaces was given ample advance warning.

51) Then, in March 2023 to May 2023, Plaintiff was repeatedly double charged the monthly co-working fee. The explanation Plaintiff received was that Plaintiff payment had not properly been deposited into Pacific Workplaces account. Plaintiff was not given any advance warning that there were payment problems rather multiple charges showed up on Plaintiff banking account. Because Plaintiff paid by check, Pacific Workplaces staff re-submitted the same check for the same monthly bill to Plaintiff's bank for payment. Plaintiff was shocked and the bank charged the Plaintiff an overdraft fee.

52) Plaintiff brought the matter to community manager MacFarlane who assured Plaintiff that the overcharges would stop but the overcharges continued.

53) On May 3, 2023, Plaintiff received an email from Defendant Warner informing Plaintiff his last day will be on May 30, 2023. On May 30, 2023, Plaintiff received an email from

Defendant Warner complaining about the messy co-working table. Defendant Warner did not identify who made the complaint considering it was Memorial Day and only a few people were in the suite on that day and Plaintiff was the only co-working person using the co working space that day.

54) Defendant Warner's email stated: this is unacceptable ... you cant work like this! Even if it is after hours and on weekends. Defendant Warner did not explain what house rule or terms of the membership agreement Plaintiff was to have broken. This was the only complaint Plaintiff had received during his aprx 1 year and 9 month membership.

55) On June 28, 2023, Plaintiff emailed Defendant Warner requesting a reasonable accommodation under California law and Title III of the ADA public accommodation law so Plaintiff may continue to access services at the Pacific Workplaces. Plaintiff states in the letter, "I am a Pacific Workplaces evening and weekend member with a disability and Plaintiff further stated that I sometimes get overwhelmed.

**56)** Plaintiff made the following accommodation request: (1) that I be able to continue my evening and weekend membership and be allowed to exercise "liberal use" of the co-working area; (2) Plaintiff be granted priority seating at the co-working as a person with a physical disability that precludes me from using the high chair; (3) that the co-working tables be separated so that the tables are at least six feet a part or some type of clear barrier be constructed … having the tables at six feet part complies with California non emergency COVID-19 guidelines and limits the spread of airborne diseases; community manager MacFarlane informed me that she also made the request to you sometime ago but no alterations have been made (4) that my membership be extended thru July 2023 so that we can allow time for you to consider my request for a reasonable accommodation and develop an appropriate solution without the need to termination. I further request that you notify me via email by June 29, 2023 by 11 am if you intend to extend my membership thru July 2023.

3rd Amended Complaint West v PBC Mgmt LLC
23-cv-03283

**57)** On June 28, 2023, at aprx 9:23p Defendant Warner emailed this reply : "I feel like we have already made reasonable accommodation by extending your membership by another month.  As I mentioned in my email on May 26, 2023, we will not be extending beyond June 30, 2023

**58)** On June 30, 2023, Plaintiff sent an email to Scott Chambers, Chief Operating Officer of Pacific Workplaces informing Mr. Chambers of pending litigation regarding temporary restraining order.  Plaintiff states:  James West a Pacific Workplaces member has applied for a temporary restraining order to the U.S. Federal court to stop manager at San Jose location after negotiations failed over a requested reasonable accommodation. Mr. Warner has or intends to termination James West membership.

**59)** I am writing so that you can  put me into touch with your attorneys of record so I can forward my application to your attorneys regarding the lawsuit and temporary restraining order. Plaintiff received no reply from Mr. Chambers.

**60)** Again, On June 30, 2023, Plaintiff emailed Defendant Warner stating: I have attached a medical verification and I once again ask you to reconsider terminating my membership.

**61)** In the medical vertification, Dr. Higgins writes: I am submitting a reasonable accommodation request on behalf of my patient James West. We are requesting the accommodation in accordance with Title III of the ADA and California Civil Rights laws. Mr. West has been diagnosed with an Anixety disorder which affects his ability to manage some projects resulting in episodes of disorganization. I support Mr. West in a request that he get the greatest support from you to maintain his access to your facility to manage his projects. I request that you modify some policies, practices or procedures that allow Mr. West to continue to access the services at your company without interruption or termination….

**62)** The other accommodation we request for Mr. West is that he have access to chairs in the workplaces, that others in the workplaces keep a distance of 6 feet in accordance with good

mitigation practices for respiratory diseases.  This because Mr. West is at increased risk of infection due to other conditions.

**63)** Plaintiff attached a copy of the June 29, 2023 medical verification letter from Dr. Higgins to an email addressed to Defendant Warner on June 30, 2023.  Plaintiff received no reply.

**64)** On July 5, 2023, Sarah Rowan, a law clerk assigned to Judge Freeman, emailed copies of the complaint, urgent ex parte application for temporary restraining order and permanent injunction, Order to Show Cause and Judge Freeman's Order re: application for temporary restraining order to Pacific Workplaces notification email address at info@pacificworkplaces.com as indicated in the Client License Agreement and Terms of the Use in paragraph 1 section titled Notices (otherwise referred to as the workplace contract).

**65)** Due to a series of unfortunate events such as Judge Freeman issuing her order the day before the 4th of July, Plaintiff being involved in a rear end car accident on July 5 and Plaintiff

thinking that the email from Judge Freeman's law clerk was a hoax and Defendants not responding to Judge Freeman's order to file a response and Plaintiff receiving the actual order from Judge Freeman after the July 7 via U.S. mail; Plaintiff was unable to comply with Judge Freeman's order by the deadline. As a result, Plaintiff's request for a TRO was denied.

66) Plaintiff vacated Pacific Workplaces premises on June 30, 2023 at 11:30p (no staff was present when plaintiff vacated the premises) at the 111 Market Street and has been unable to locate affordable, compatible, or suitable replacement work place.

67) Plaintiff depends on access to public libraries with limited access hours (especially during evening and weekends), no beverage service, and no kitchen facilities). Also, Plaintiff is playing substantially more for copy, print, and scan services at Fed Ex and Staples.

68) The Pacific Workplaces location on Market Street in San Jose provided unique features such as convenient access to federal

and state courts as well as convenient access to City of San Jose municipal offices and the County of Santa Clara headquarters located about a mile or two from the market street location.

**69)** 42 USC SECTION 1981 RACE DISCRIMINATION

**70)** Plaintiff incorporate paragraphs 1- 68 as set for entirely

**71)** 42 USC of the US Code section: **All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by white citizens …**

**72)** **The term "make and enforce contracts" includes the making, performance, modification and termination of contracts and the enjoyment of all benefits, privileges, terms, and conditions of the contractual agreement.**

**73)** Plaintiff was subjected to intentional discrimination based upon Plaintiff's race as alleged throught out this complaint.

3rd Amended Complaint West v PBC Mgmt LLC
23-cv-03283

**74)** Plaintiff alleges that PBC Management managers, members and staff discriminated against Plaintiff based on Plaintiff's race.

**75)** Plaintiff belongs to a protected class, Plaintiff attempted to contract for services and Plaintiff was denied the right to contract for services. Further, after repeated denials of a workplace agreement, Plaintiff was offered a workplace agreement but Plaintiff did not enjoy the same benefits, privileges, terms and conditions of the contractual agreement as white and Asian members.

**76)** On September 24, 2021, Plaintiff attempted to contract with PBC Management after being told by staff via phone that Plaintiff could start a contract that day.

**77)** However, when Plaintiff arrived to tour the facilities and start a membership Plaintiff was told to look elsewhere and was denied the opportunity to start a contract.

**78)** Plaintiff a member of a racial protected class, attempted to contract for services and was denied the right to contract for

services with PBC Management doing business as Pacific Workplaces.

79) Plaintiff observed that white and Asian prospective client were repeatedly granted same day and short term membership.

80) Further Plaintiff continued to be treated less favorably than non black members and center staff.

81) Non black members violated the membership agreement by being loud, creating a nuisance (setting off the fire alarm; leaving doors ajar; blocking hallways with chairs, smoking in the suite and violating house rules by leaving the dishes in the sink in express violation of house rules) but where never terminated for this conduct.

82) Plaintiff was subjected to harassment by non black members when they would take all the coffee cups, plastic plates and utensils so there was none for Plaintiff to use.

83) Plaintiff was repeatedly challenged when he arrived at the suite by white and Asian members asking "do you have a key or who are you here with?"

**84)** Plaintiff was subjected to ridicule for his work habits and complaints were made to staff about Plaintiff that were not accurate and Plaintiff was not promptly told about.

**85)** As a result, Plaintiff was viewed unfavorably by staff and management;

**86)** Plaintiffs' membership at Pacific Workplaces were terminated by the Defendant Warner alleging Plaintiff's "business was not a good fit"

**87)** Plaintiff was informed that the only reason membership was terminated was for non payment of fees. Plaintiff had paid all fees on time and in fact was repeatedly overcharge co working services during the period of March 2023 – June 2023.

**88)** As a further result, Plaintiff did not enjoy the benefits and services of his contracted agreement due to his race.

**89)** <u>**Title III ADA Failure to Accommodate (Reasonable Accommodation)**</u>

**90)** Plaintiff incorporate paragraphs 1- 88 as set forth entirely here

**91)** Title III prohibits private places of public accommodations from discriminating against individuals with disabilities.

**92)** 28 CFR 36.201(a) states: No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any private entity who owns, leases, (or leases to) or operates a place of public accommodation.

**93)** 28 CFR 36.302(a) : a public accommodation shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to afford goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities.

**94)** Plaintiff alleges this claim against defendant PBC Management and Defendant Warner both in his individual and official capacity as managing partner for PBC Management.

**95)** PBC Management LLC aka Pacific Workplaces is a business establishment renting out office, conference room and work places servicing Arizona, Nevada, and California.

**96)** PBC Management LLC aka Pacific Workplaces is a place of public accommodation subject to Title III of the ADA Public Accommodation because PBC Mgmt LLC is a facility operated by a private entity whose operations affect commerce and falls within the categories of (5) an other sales or rental establishment and (6) other service establishment as defined in 28 CFR 36.104

**97)** As defined in the Client License Agreement and Terms of Use PBC Management aka Pacific Workspaces (Section 2 Licenses) is the commercial equivalent of an agreement for accommodation in a hotel. As such PBC Management qualifies as a public accommodation under the ADA title 3.

**98)** Plaintiff requested on August 19, 2022 a modification to the co working area that included maintaining work tables at least 6 feet a part; providing more floor level chairs. Defendant

Warner did not provide the request accommodation but instead offered to waive the 30 day notice so Plaintiff could go elsewhere.

**99)** Plaintiff continued to be the only co working member in the co working area on evening and weekends.

**100)** On May 3, 2023, Plaintiff received a termination notice from Defendant Warner. Defendant Warner stated "I don't think your business and ours is good fit for each other. It's time we parted ways." On May 26, 2023, Plaintiff requested an extension to stay thru June 2023. Defendant Warner granted the extension.

**101)** After Plaintiff received the termination notice and an extension to stay, On May 30, 2023, Plaintiff received an email from Defendant Warner stating "this is unacceptable and Plaintiff must do better". Plaintiff was sent a picture of documents spread out all over the co working tables. This is the only complaint Plaintiff received from management or staff about his work habits. The complaint was received after Defendant

Warner had decided to terminate Plaintiff's Workplace agreement.

102) Plaintiff suffered an anxiety episode on that day resulting in the messy table.

103) On June 28, 2023 , Plaintiff emailed Defendant Warner stating that "I am writing to request a reasonable accommodation under California law and Title III of the ADA public accommodation code so that I may continue to access services at Pacific Workplaces.  As I need to manage large amounts of documents from time to time I sometimes get overwhelmed. The requested accommodation I am making is that I able to continue my evenings and weekends membership; next accommodation request is to be granted priority seating at the co-working table as a person with a physical disability that precludes me from using the high chairs; third accommodation that the tables be at least six feet a part to comply with California non emergency COVID-19 guidelines and limits the spread of airborne disease and the fourth accommodation that

my membership be extended thru July 2023 to allow time to consider my requested accommodation.  I further request that you notify me via email by June 29, 2023 by 11am …. If you intend to extend my membership.

104) On June 28, 2023 at 9:23pm via email Defendant Warner writies "I feel like we have already made a reasonable accommodation by extending your membership by another month … we will not be extending beyond 6/30/2023.

105) Plaintiff had been using the co working area without instance since October 2021.

106) On June 30, 2023, Plaintiff sent Defendant Warner another email requesting a reconsideration with medical verification from his primary care physician stating "Mr. West has been diagnosed with an Anxiety disorder which affects his ability to manage some projects resulting in episodes of disorganization. I (Dr Higgins) request that you modify some policies, practices, or procedures that will allow Mr. West to continue to access the service at your company without interruption or termination."

**107)** Plaintiff did not receive a reply to his email with the medical verification.

**108)** Plaintiff qualifies as individual with a mental health (anxiety disorder and physical disability (acute back pain) as defined by ADA;

**109)** PBC Management aka Pacific Workspaces is a private entity that owns, leases, or operates a place of public accommodation whose operations affect commerce and fall within at least one of the categories as defined by 28 CFR 36 section 104: category (5) other rental establishment and (6) other sales establishment;

**110)** Defendant Warner and PBC Management LLC employed a discriminatory policy, practice or procedure of terminating memberships of members who don't fit in based upon a disability;

**111)** Defendants discriminated against Plaintiff based upon Plaintiff's disability by (a) denying (failing) to make the requested reasonable modification that (b) was necessary to

accommodate Plaintiff's disability. Defendants sent the email on June 28, 2023 at 9:23pm from Defendant Warner denying Plaintiff's requested accommodation.

112) On June 30, 2023. Plaintiff sent a second request for a reasonable accommodation with medical verification to Defendant Warner. Plaintiff received no reply.

113) Defendants discriminated against Plaintiff based upon Plaintiff's disability by failing to make the requested reasonable modification that was necessary to accommodate Plaintiff's disability.

114) Plaintiff seeks injunctive relief as follows: reinstatement of Plaintiff's workplace agreement; an order requiring the co-working area tables be separated by six feets; priority or reserve seating for persons with disabilities; declaration that Defendants unlawfully discriminated against based on a disability, an injunction against harassment or retaliation by officers, staff or members of Pacific Workplaces and attorney

fees and cost of suit and any other actions deemed justice by the court.

**115)** Unruh Civil Rights Claim

**116)** Plaintiff incorporate paragraphs 1- 114 as set forth entirely here

**117)** Civil Code section 52(a) provides that "[w]hoever denies, aids, or incites a denial or makes any discriminatory or distinction contrary to section 51, 51.5, 51.6 is liable for each and every offense for the actual damages and any amount that may be determine by a jury, or court sitting without a jury, up to a maximum of three times the amount of actual damages but in no case less than four thousand dollars ($4,000) and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in section 51, 51.5, or 51.6.

**118)** Plaintiff alleges that PBC Management is a place of public accommodation and a business establishment providing workplaces open to the public.

**119)** Plaintiff incorporates the allegations of the title III claim and section 1981 claim as the basis for the claims under the California Unruh Civil Rights. By doing the things describe thru out this complaint defendant PBC Management and Defendant Warner violated the Unruh Civil Rights Act.

**120)** Plaintiff contacted PBC Management aka Pacific Workspaces to contract for workplaces services

**121)** Defendant PBC Management is a business establishment doing business in California;

**122)** Plaintiff is a member of a protected class covered by the act: race, disability, and gender

**123)** Plaintiff was denied services and full and equal privileges offered by Pacific Workplaces;

**124)** Plaintiff was subjected to harassment and discrimination because of Plaintiff's race, disability and gender and Plaintiff's contract was terminated due to Plaintiff protected status

**125)** Plaintiff suffered the lost of a work space resulting from the termination and suffered further damages. Defendants PBC

Management and Defendant Warner conduct to terminate Plaintiff's contract was a substantial factor in causing Plaintiff's harm and damages.

126) Plaintiff is a person with a mental (anxiety disorder) and physical disability (acute back pain) under California law is a person with a disability as defined under California law Cal. Govt Code section 12926 et al and California Civil Code section 51 et al.

127) Plaintiff was discriminated against by PBC Management a business establishment and Defendant Warner, managing partner at PBC Management by denying and or failing to make a requested reasonable accommodation or modification that was necessary to accommodate Plaintiff's disability. Plaintiff was informed in an email Plaintiff received from Defendant Warner on June 28, 2023 @ 9:23pm of the denial of Plaintiff's accommodation requests.

128) Defendants PBC Management and Warner denied or made a distinction that denied full and equal advantages, privileges,

and services to Plaintiff based upon Plaintiff's disability and therefore constituted a violation of California Civil Code 51 et al.

129) Plaintiff is entitle to recover civil penalty(s) authorized by California Civil Code section 52(a)

130) Defendants PBC Management and Warners acts were intentional acts of discrimination based upon race, gender and disability;

131) As a direct and proximate result Defendants wrongful actions, Plaintiff suffered damages, all in the amount to be proven at trial but exceeding the minimum jurisdictional limits of this court.

132) Plaintiff seeks relief as set forth below.

133) Claim for Breach of Contract

134) Plaintiff incorporates paragraphs 1-132

135) Plaintiff and PBC Management representative Nguyen enter into a valid co working agreement that in exchange for co working space and services Plaintiff would pay a monthly fee.

**136)** Plaintiff by paying his monthly fee on time each month since October 2021 performed his part of the contract and that all conditions required for defendants performance occurred.

**137)** Defendants PBC Management and Defendant Warner breached the contract by failing:

**138)** to provide beverage services on evening and weekends along with complimentary cups and other condiments;

**139)** by allowing a nuisance to exist on the evening and weekend by allowing annoying over head music to be played; other members to have clients and guest wandering the suite unattended; leaving the doors ajar; setting off the fire alarm

**140)** by failing to provide adequate notice of closure of the workplaces on January 7 and 8 and failing to provide Plaintiff with alternative work site or a discount;

**141)** by allowing non black members to engage in nuisance conduct such as smoking, leaving dishes in the sink, leaving doors ajar, blocking hallways and racial motivated harassing behavior

**142)** by allowing race discrimination and harassment and failing to accommodate Plaintiff with a qualified disability as required in section of the 7 of the contract;

**143)** by repeatedly overcharging Plaintiff for monthly charges from May 2023 to June 2023

**144)** by wrongfully terminating the contract in violation of federal and California state law

**145)** As a result Plaintiff incurred the following damages and expenses to include but limited to the following:

**146)** Purchasing noise reducing devices

**147)** Provide own supplies such as instant coffee, cups, and disposal plates,

**148)** despite defendant contracting for cleaning services often times Plaintiff had to clean the appliances in the community center before use such as the refrigerator, microwave, and mini-oven before use and wipe down counter tops and tables

**149)** incurred expenses to locate substitute and alternative work site during temporary closure

**150)** and other compensatory and nominal expenses

**151)** Negligence Claim

**152)** Plaintiff incorporate paragraphs 1- 150  as set forth here in full

**153)** Plaintiff alleges that Defendants PBC Management and Warner owned Plaintiff a duty to act with reasonable and due care as to include but limited to the following:

**154)** To provide a workplace environment that was COVID 19 compliant with federal, state local laws, regulations, and orders regarding the spread of COVID-19 and other respiratory communicable diseases;

**155)** to modify the co working area to reduce the risk of spread of COVID-19 and other respiratory communicable diseases due to the lack of six feet social distancing, poor air circulation and the present of members who exhibit respiratory symptoms and would not wear a mask or leave the co-working area;

**156)** Defendants PBC Management and Warner was aware of this risk and failed to act after Plaintiff  and community manager requested modifications to the coworking area;

**157)** As a result, Plaintiff suffered respiratory illness directly related to exposure to members in the co working area and sort medical care and was forced to take time off from working on his project at the workplace;

**158)** Defendants breach the duty negligently and recklessly

**159)** Defendants negligent and/or reckless conduct was a substantial cause of Plaintiff's harm and damages

**160)** Defendants conduct was a substantial factor in causing Plaintiff's harm and damages; a respiratory illness that Plaintiff contracted from a member while working in the co-working area; lost work time; lost income;

**161)** As a result of Defendants' negligence, Plaintiff suffered special and general damages in the amounts to be determine at trial

**162)** Plaintiff is informed and believes and alleges that in performing the acts alleged, Defendants acted with oppression, malice and conscious disregard of Plaintiff's rights, safety and well being;

**163)** Plaintiff is entitled to punitive damages to punish Defendants and to deter such conduct in the future in an amount to be determined at trial

**164)** Fraud Claim – Repeated Bank Charges

**165)** Plaintiff incorporate paragraphs 1- 164

**166)** Plaintiff alleges fraudulent misrepresentation against Defendants PBC Management's accounting team in the processing of the monthly member fees.

**167)** On March 17, 2023, Plaintiff discovered he was charged twice with the Feb 2023 check in March 2023 resulting in an overdue charge in addition to Plaintiff having paid his March 2023 fee with a March check;

**168)** On March 20, 2023, Plaintiff was sent false and misleading copy of records indicating his payment had been voided.

**169)** Plaintiff via email and phone contacted community manager MacFarland to explain to her that this records are wrong; that he could provide copies of cancelled checks from his bank;

**170)** Plaintiff in talking to his banks managers could not determine the bank account or financial institution the funds were being sent to; Plaintiff demanded that this activity stop on or about March 20, 2023 or Plaintiff would file a complaint with the Santa Clara County District Attorney's consumer complaint office;

**171)** Community Manaager MacFarland repeatedly assured Plaintiff that the accounting problem was fixed but Plaintiff continued to get notices from the accounting team stating payments were not processing properly;

**172)** Plaintiff also requested if he could make payments via money order but was told that Pacific Workplaces did not accept money orders;

**173)** After Plaintiff stated that he would file a complaint with the Santa Clara County District Attorney Office; Plaintiff received a email from Defendant Warner stating his membership was being terminated;

**174)** Plaintiff alleges Pacific Workplaces staff intentionally misrepresented the fact that Plaintiff's payments were not being received or deposited into Pacific Workplaces account, and presented Plaintiff with accounting records which showed voided transactions enter by Pacific Workplaces staff. The staff knew or should have known these records were false; Plaintiff was repeatedly told the overpayment would stop but the overpayment and attempts to double charge Plaintiff's bank account continued into June 2023; Plaintiff relied on assurances that this activity would stop or it was solved by the community manager when in fact accounting staff continued to double bill Plaintiff weeks after payments to Pacific Workplaces had cleared Plaintiff's bank resulting in Plaintiff incurring overdraft fee(s).

**175)** Plaintiff seeks damages and restitution as set forth in this complaints

**176)** Plaintiff prays for relief as set forth below.

**177)** ADA Retaliation Claim

**178)** Plaintiff incorporate paragraphs 1- 176

**179)** Plaintiff alleges that Defendants PBC Management and Warner engage in prohibited ADA retaliation activity

**180)** Plaintiff is an individual with a disability as defined in the ADA

**181)** Defendant PBC Management is a business subject to the public accommodation requires as defined by section 2 entitled License which states: This Agreement is the commercial equivalent of an agreement for accommodation in a hotel.

**182)** Defendants' PBC Management and Warner had notice of the disability when Plaintiff engaged in protected activity to request a modification and a reasonable accommodation to continue Plaintiff workplace agreement.

**183)** Defendants PBC Management and Warner acting his capacity as Managing partner denied Plaintiff's request for an accommodation and subsequently terminated Plaintiff workplace agreement even when the accommodation request was accompanied by medical verification by Plaintiff's primary doctor

**184)** Defendants PBC Management and Warner further interfered with Plaintiff in the exercise of his rights in his attempt to obtain a temporary restraining order in the Northern California federal court even though PBC Management, and Warner had both actual and constructive notice of Plaintiff's application for a restraining order to stay the termination but refused to identify their attorneys or indicate who Plaintiff should forward the TRO notices to.

**185)** Plaintiff engaged in protected activity under Title III of the ADA in that Plaintiff requested a reasonable accommodation which was denied by Defendants PBC Management and Warner

**186)** Plaintiff subsequently engaged in protected activity under Title III and requested a reconsideration of Defendant Warner and PBC Management's decision to deny his accommodation but this request include medical verification.

**187)** Plaintiff received no reply.

188) On June 30, 2023, Plaintiff emailed Scott Chambers, Chief Operating Officer and agent for service of process as identified on the California Secretary of State's business search web site stating:  James West …. Has applied for temporary restraining order to the U.S. Federal Court to stop manager at San Jose location after negotiations failed over a requested reasonable accommodation.  Mr. Warner has or intends to termination James West membership.  I am writing so that you can put me into touch with your attorneys of record so that I can forward my application to your attorneys regarding the lawsuit and temporary restraining order.  Plaintiff received no reply.

189) On July 5, 2023, Sarah Rowan, a law clerk assigned to Judge Freeman emails copies of the complaint, urgent ex parte application for temporary restraining order and permanent injunction, Order to Show Cause and Judge Freeman's Order re: application for temporary restraining order to Pacific Workplaces notification email address at info@pacificworkplaces.com as indicated in the Client License

Agreement and Terms of the Use in paragraph 1 section titled Notice (otherwise referred to as the workplace contract).

190) Plaintiff's TRO was denied by Judge Freeman because Plaintiff could not obtain the necessary service of process information from Defendants prior to Judge Freeman's order.

191) Judge Freeman errored because she was not aware that both actual and constructive notice of the TRO was giving by her law clerk and thus Defendants were under notice to provide a response to the application for TRO.

192) Thus Defendants refusal to provide appropriate contact information for service of TRO before Judge Freeman order resulted in Plaintiff's request for a TRO being denied.

193) Plaintiff seeks the same relief as outlined in his ADA reasonable accommodation claim and other relief as appropriate in the pray for relief section.

194) Private Nuisance

195) Plaintiff alleges Plaintiff leased a work space with Pacific

Workplaces and that Pacific Workplaces maintained the following nuisances:

**196)** Fire alarm falsely going off cause members enter via the emergency exit;

**197)** Rotten food left in the community kitchen that containmated other members food

**198)** Loud and unreasonable noise from the overhead speakers

**199)** Roaches in the community kitchen; reception area, and restrooms;

**200)** Dirty dishes left by staff and members

**201)** Smoking in the suite

**202)** Members popping open doors after hours

**203)** Members blocking the entrance and exit doors with chair for their convenience

**204)** And Defendants failed to address these problems;

**205)** These problems were both a health, safety, security and fire harazard;

**206)** These nuisance interfered with Plaintiff quiet enjoyment

**207)** Plaintiff did not consent to these nuisances

**208)** A reasonable person would be annoyed by this nuisances;

**209)** Plaintiff was harmed

**210)** And Defendant failure to stop these nuisances and conduct created these nuisance was a substantial factor in causing Plaintiff harm;

**211)** After complaining about these nuisances Defendant Warner gave Plaintiff notice that his membership would be terminated in retaliation.

**212)** Plaintiff seeks damages are described thru out these complaint

**213)** Unfair Business Practice

**214)** Plaintiff incorporate paragraph 1-212 as set forth here

**215)** Plaintiff alleges that PBC Management, staff and Defendant Warner engage in unfair and deceptive acts or practices against Plaintiff; that Plaintiff suffered loss of money and the acts of PBC Management, staff and Warner were acts and deceptive practices which caused Plaintiff's loss moneys and termination of workplace agreement.

**216)** Plaintiff also alleges that all the allegations and claims contained in the preceding paragraphs constitute unfair business practices and support Plaintiff's unfair business practices claim.

**217)** Damages

**218)** Plaintiff prays judgment against Defendants as follows:

**219)** Compensatory damages, in the amount to be determined and according to proof at trial

**220)** Declaratory judgment against defendant for their wrongful conduct

**221)** Punitive damages in an amount to be determined according to proof at trial

**222)** Reasonable attorney fees and for cost of suit in this action

**223)** For a Cease and Desist order

**224)** For an order to reinstate Plaintiff's workplace agreement and

**225)** For such other and further relief as the court deems proper.

**226)** Plaintiff demands jury trial on all issues.

Date: July 12 , 2024                    Plaintiff /s/ James West